N THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Elbert John Benjamin Rutherford,  )  | Civil Action No.: 8:09-2137-HMH-BHH |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Joshua B. Cannon,  ) | |
| ) | |
| Defendant.  ) | |

The pro se Plaintiff filed this civil rights action on August 13, 2009, alleging various constitutional violations pursuant to 42 U.S.C. § 1983. Before the court is the Defendant's Amended Motion for Summary Judgment. (Dkt. # 43).[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983, and submit findings and recommendations to the District Court.

On June 10, 2010, the Defendant filed an Amended Motion for Summary Judgment. (Dkt. # 43.)[2] On June 11, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On June 21, 2010,

---

[1] The Plaintiff asserts that the Defendant's motion is premature and states he would like to conduct discovery. However, the undersigned finds no pending motion from the Plaintiff regarding discovery and therefore will not address this issue.

[2] The Defendant filed his first summary judgment motion on January 4, 2010, in which he alleged, inter alia, that the Plaintiff's claims were premature as the state criminal DUI charge was pending. (Dkt # 25.) The undersigned recommended that the case be stayed pending resolution of the state criminal charge. (Dkt. # 31.) Prior to consideration by the District Court, on April 13, 2010, the Plaintiff was found not guilty on the state charge. Therefore, on May 11, 2010, United States District Court Judge Henry M. Herlong declined to adopt the report and recommendation and denied the Defendant's summary judgment motion as moot. (Dkt. # 41.) Judge Herlong gave the Defendant thirty days to refile his motion for summary judgment. *Id*.

the Plaintiff filed a response opposing the Defendant's Amended Summary Judgment Motion. (Dkt. # 49.)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*,

477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**FACTS**

On February 21, 2009, between 3:00 and 5:30 p.m., the Plaintiff states that he was drinking yeager bombs, a mixture of Red Bull and Jagermeister. (Pl.'s Mem. Opp. Summ. J. Mot. Attach. # 1 - Pl.'s Aff. ¶¶ 1-2.) He states that at 7:00 p.m., he ate some food and then at 7:30 p.m., he got into his car, a white Cadillac, and began to drive towards downtown Greenville. (*Id.*) Melissa Jones, a passenger in another car, called the police and reported that she thought that the driver of a white Cadillac may be driving while intoxicated because he was driving erratically and had swerved off the road. (Compl. at 3-4.; Def.'s Mem. Supp. Summ. J. Mot. Attach. # 4 - Cannon Aff. ¶ 2.) The Defendant Trooper Joshua Cannon responded to the call, identified the car and followed it for a mile and a half to two miles prior to stopping the car which the Plaintiff was driving. (Compl. at 4-5; Pl.'s Aff. ¶ 9.)

Trooper Cannon had the Plaintiff perform several roadside or field sobriety tests ("FSTs") to which the Plaintiff acknowledges he consented. (Compl. at 5.) The Plaintiff, however, alleges Trooper Cannon did not properly administer the tests and he disputes some of the statements which Trooper Cannon has made about his performance on some of these tests. *Id.* The Plaintiff was taken to the Greenville County Detention Center ("GCDC") and he was given a breathalyzer test twice. (Compl. at 5; Pl.'s Aff. ¶ 16.) Because both tests showed interference on the results, Trooper Cannon asked if the Plaintiff would take a blood test, and the Plaintiff consented. (Compl. at 5; Pl.'s Aff. ¶ 18.) The Plaintiff was then taken to Greenville Memorial Hospital where his blood sample was drawn. The Plaintiff's blood alcohol tests results showed a .035 blood alcohol concentration

3

and trace amounts of cocaine. (Compl. at 5.) The Plaintiff was taken back to the GCDC and booked. (Compl. at 6.) He was released the following day. (Pl.'s Aff. ¶¶ 19-20.) The Plaintiff was found not guilty of DUI following a jury trial in April 2010.

In his affidavit, the Defendant Trooper states that after he identified the Plaintiff's car, he observed that all of the car's windows were rolled half way down, which he found unusual in light of the time of year and temperature which was in the mid-forties. (Cannon Aff. ¶ 5.) Cannon states he initiated a traffic stop and upon approaching the vehicle, he detected an odor of alcohol. (Cannon Aff. ¶¶ 7-8.) Cannon avers that he asked the Plaintiff if he had been drinking and the Plaintiff responded that he had been drinking beer. (Cannon Aff. ¶ 10).

Cannon asked the Plaintiff to step out of the car and administered several FSTs. (Cannon Aff. ¶ 12). Cannon states that the Plaintiff displayed five of six clues on the horizontal gaze nystagmus test. *Id*. He also avers that on the walk and turn test, the Plaintiff had difficulty maintaining his balance stepped off line, missed a heel-to-toe, turned improperly, and used his arms for balance. *Id.* On the one-leg stand, Cannon avers that the Plaintiff used his arms for balance. *Id.*[3] Cannon states that he then arrested the Plaintiff for DUI and transported him to the GCDC.

---

[3]"The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct. The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]. The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine." *Leibin v. Town of Avon*, 2010 WL 3038100 nn. 2-4 (D. Conn. 2010).

In his Complaint, the Plaintiff alleges the Defendant Cannon violated his constitutional rights by stopping and arresting him without probable cause. He is seeking actual and punitive damages. (Compl. at 7.)

**DISCUSSION**

The Plaintiff alleges that Trooper Cannon did not have probable cause to initiate the stop or to arrest him for DUI. He further alleges in his memorandum opposing summary judgment that his blood sample was illegally obtained. (Pl.'s Mem. Opp. Summ. J. Mot. at 8.)[4]

**Initial Stop**

The Plaintiff contends that Trooper Cannon violated his Fourth Amendment rights by stopping him without a reasonable suspicion of criminal activity under *Terry v. Ohio*, 392 U.S. 1 (1968). The undersigned disagrees.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. Amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)); *see also Whren v. United States,* 517 U.S. 806, 809-10 (1996). A traffic stop is constitutionally reasonable when a police officer has either "probable cause to believe that a traffic violation has occurred[,]" *Whren v. U.S.*, 517 U.S. 806, 810 (1996), or a "reasonable articulable suspicion that criminal activity may be afoot." *Terry*, 392 U.S. at 30 (quotation marks omitted). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in

---

[4]The Defendant states that the Plaintiff has also alleged a claim of intentional infliction of emotional distress. In his memorandum opposing the Defendant's Summary Judgment Motion, the Plaintiff states that he never intended to assert a claim for intentional infliction of emotional distress against Trooper Cannon. (Pl.'s Mem. Opp. Summ. J. Mot. at 12.) Therefore, the undersigned has not addressed any such claim in this report.

quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *White,* 496 U.S. at 330.

The Court in *Terry* set up a two-prong test of the reasonableness of a traffic stop. First, a court must decide whether the detention was "justified at its inception." *Terry,* 392 U.S. at 20. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* at 21. Those facts must tend to show that the detainee has committed or is about to commit a crime. *Florida v. Royer,* 460 U.S. 491, 498 (1983). Second, the officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20. The court must ask if the facts available to the arresting officer at the time of the search or seizure would "warrant a [person] of reasonable caution in the belief that the action taken was appropriate." *Terry*, 392 U.S. at 21-22 (internal quotations and citations omitted). At both stages, the reasonableness of the officer's suspicions is judged by an objective standard taking the totality of the circumstances and information available to the officers into account. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). All relevant factors must be considered in the reasonable suspicion calculus - even those factors that, in a different context, might be entirely innocuous. *Arvizu*, 534 U.S. at 277-78. Officers may draw on their own experience and specialized training to make inferences from and deductions about the information that "might well elude an untrained person." *Id.* at 273.

A problem arises when the officer's suspicion of criminal activity is based not upon what he personally observed, but rather upon information provided by an informant. The Supreme Court has considered the reliability of tips from citizens in several *Terry* stop cases in the context of anonymous informants. For example, in *Florida v. J.L.*, 529 U.S. 266 (2000), the Court held that an anonymous 911 call must be corroborated to create

sufficient indicia of reliability. In *J.L.*, an unidentified person called the police and reported there was an African-American man with a gun and wearing a plaid shirt standing at a bus stop. There was no audio recording of the call and nothing was known about the informant. *Id.* at 268. Police officers responded to the call, and saw three black males at the bus stop, and one of the men was wearing a plaid shirt. *Id*. The Court emphasized in *J.L.,* that an unreliable tip, standing alone, does not give an officer reasonable suspicion to effectuate a *Terry* stop. *Id.* at 268.

There is less of an issue, however, when the tip comes from a known informant whose veracity may be assessed and who may be subject to legal repercussions for making false allegations. *See Adams v. Williams*, 407 U.S. 143, 146-47 (1972). For a third-party report of suspected criminal activity to form the basis of an officer's reasonable suspicion, that report must possess sufficient indicia of reliability. *See, e.g., J.L.*, 529 U.S. at 270. In *United States v. Christmas*, 222 F.3d 141 (4th Cir. 2000), the court found that a tip from a citizen informant who had provided police with her home address in a face-to-face encounter was sufficiently trustworthy and more reliable than the anonymous tip at issue in *J.L.*

The Plaintiff is correct that Trooper Cannon may not have bee able to rely solely on the report of an anonymous 911 caller to establish probable cause or even reasonable suspicion that the Plaintiff had committed an offense. *See J.L.*, 529 U.S. at 268. Here, however, the report of erratic driving came from a known source, Melissa Jones. The report of erratic driving conveyed to Cannon also possessed several other indicia of reliability. First, the report was detailed and included the make and model of the car and the license plate. Second, the report was contemporaneous with Jones' observations. "[R]eports made contemporaneously with a complainant's observations are generally more reliable than those reports made later in time." *Fernandez-Castillo*, 324 F.3d at 1119.

Finally, there was corroboration of the alleged illegal activity through Trooper Cannon's own observations. Though perhaps innocent in other contexts, Trooper Cannon's inference regarding the Plaintiff's driving in cold weather with the windows rolled down was highly relevant here and is to be given due weight in determining probable cause. Relying on his law enforcement training and experience, Trooper Cannon avers that this fact tended to show that the driver had possibly been drinking corroborating the report made by Jones to the dispatcher. Trooper Cannon is entitled to apply his training. The instant case is similar to *U.S. v. Fernandez-Castillo*, 324 F.3d 1114 (9th Cir. 2003). In *Fernandez-Castillo*, the court held that a report of erratic driving from a state department of transportation employee was reliable and entitled to due weight in determining reasonable suspicion especially when combined with officer's own corroborating observations including seeing the driver sitting very close to steering wheel and drifting within the lane. The officer testified that a driver sitting very close to the steering wheel could indicate that the driver was impaired and trying to concentrate on the road or compensate for a loss of peripheral vision due to drugs or alcohol. *See also Illinois v. Gates*, 462 U.S. 213, 232 (1983) (explaining that a court's review of evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement").

Thus, based on the foregoing, the undersigned finds that the totality of circumstances, including Trooper Cannon's observations and the detailed report from a reliable source, an identified caller, equaled a reasonable suspicion that the Plaintiff was driving under the influence allowing Trooper Cannon to stop the Plaintiff's car and investigate further. Accordingly, Trooper Cannon should be granted summary judgment on this claim.

**Arrest**

The Plaintiff also contends that Trooper Cannon did not have probable cause to arrest him for DUI. The undersigned disagrees.

Under the Fourth Amendment, an officer may make a warrantless arrest of an individual in a public place if supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). In assessing the existence of probable cause to make a warrantless arrest, a court is to look at the totality of the circumstances known to the officer at the time of the arrest. *United States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995). Probable cause exists when the facts and circumstances known to the officer "would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Garcia,* 848 F.2d 58, 60 (4th Cir. 1988). Probable cause requires only enough evidence to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir.1994) (internal quotation marks omitted). Probable cause must be supported by more than a mere suspicion, but evidence sufficient to convict is not required. *Wong Sun v. United States,* 371 U.S. 471, 479 (1963).

As noted above, the undisputed evidence establishes that Jones reported erratic driving by the Plaintiff, Trooper Cannon's observed the Plaintiff's windows rolled down despite the chilly temperatures and smelled alcohol, and the Plaintiff admitted that he had consumed alcohol. Together these facts constitute probable cause for a DUI arrest. In *Cooper v. City of Virginia Beach, Va.*, 817 F.Supp. 1310 (E.D.Va. 1993), the court held that the arresting officer had probable cause when the evidence showed that the defendant was driving a car, admitted on the scene that he had been drinking before getting behind the wheel that night, and the officer testified that he could smell alcohol on the defendant.

Trooper Cannon also avers that the Plaintiff failed three separate FSTs: the

9

horizontal gaze test, the nine-step walk and turn test and the one-legged stand test. (Cannon Aff. ¶ 12.) The Plaintiff contends that one of the FSTs was simply administered incorrectly and not in precise conformity with certain standards. He argues that the FST, therefore, was insufficient to establish probable cause to arrest him.

The National Highway and Traffic Safety Administration ("NHTSA") has established standards for these FSTs. The Plaintiff contends that Trooper Cannon failed to follow these standards on the one-legged stand test by requiring him to count to thirty rather than ten. The Defendant argues that the Plaintiff is relying on old cases which do not address the current NHTSA standards which includes counting to thirty. Even if the Court were to accept the Plaintiff's version of the facts and conclude that Trooper Cannon improperly administered one of the FST, as discussed above, the remaining undisputed facts offered by Defendant support a finding of probable cause for DUI.[5] Again, the undisputed evidence is that an identifiable witness, Jones, reported that the Plaintiff was driving erratically, Trooper Cannon observed the Plaintiff's windows were rolled down on a chilly night and smelled alcohol coming from inside the Plaintiff's car, the Plaintiff failed two FSTs, and the Plaintiff admitted to drinking alcohol. Clearly, even without considering the results of all of the FSTs, based upon a totality of the circumstances, Trooper Cannon had sufficient probable cause to arrest the Plaintiff for DUI.

---

[5]The Plaintiff in his response to the Defendant's Summary Judgment Motion now speculates about the authenticity of the Plaintiff's arrest video and whether the person performing the FSTs is even him. (Pl.'s Mem. Opp. Summ. J. at 6-7.) The Defendant does not rely upon the video in his summary judgment motion and it was the Plaintiff who filed a copy with this court. In any event, the Plaintiff is merely speculating that the video is not authentic and conclusory allegations, without more, are insufficient to preclude the granting of summary judgment. *Ross*, 759 F.2d at 365. Interestingly, the undersigned notes that the Plaintiff is inconsistent regarding his allegation that the video is not authentic and in fact relies upon the video to support his allegations that Trooper Cannon has committed perjury. (Dkt. # 45.)

Finally, the undersigned notes that although the Plaintiff was found not guilty of DUI in state court, the court's probable cause analysis remains the same. Claims of false arrest cannot be premised on this type of hindsight. *See, e.g., Martin v. Rodriguez,* 154 F.Supp.2d 306, 312 (D.Conn. 2001) ("Ultimate dismissal of the charges against an arrestee does not indicate that the arrest was made without probable cause."). Rather, probable cause claims are evaluated on the basis of what the officer on the scene reasonably perceived and what a reasonable person would think was probable. *See Walczyk v. Rio*, 496 F.3d 139, 156-57 (2d Cir. 2007) ("While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties. In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.") (citations and quotation marks omitted). Simply because a jury subsequently determined that the Plaintiff was not driving under the influence does not change that totality of circumstances. *See id.* at 157 ("[P]robable cause does not demand any showing that a good-faith belief be correct or more likely true than false. It requires only such facts as make wrongdoing . . . probable.").

In the context of this §1983 case, the disposition of the Plaintiff's state criminal charge is simply irrelevant. The Fourth Amendment does not require an arresting officer to be infallible in his assessment of whether a crime has been committed. It simply demands that probable cause support an arrest. Here, as explained above and in light of the totality of circumstances, Trooper Cannon had probable cause to arrest the Plaintiff for DUI. Accordingly, Trooper Cannon should be granted summary judgment on this claim.

**Blood Sample**

Finally, the Plaintiff alleges Trooper Cannon violated his rights when he took him to the hospital for a blood sample. The undersigned disagrees.

11

Initially, the undersigned notes that this claim is not properly before the court as the Plaintiff did not raise this allegation in his Complaint. He raises it for the first time in his memorandum opposing the Defendant's Summary Judgment Motion. Significantly, a plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *Church v. Maryland,* 180 F.Supp.2d 708, 732 (D.Md. 2002) (disregarding an allegation that was raised for the first time in plaintiff's affidavit in opposition to defendants' motion for summary judgment). In any event, this claim is without merit.

The plaintiff alleges that Cannon violated his "right to prove his innocence" and failed to follow "the rules of procedure." (Pl.'s Mem. Opp. Summ. J. Mot. at 9.) S.C. Code § 56-5-2950 provides, in pertinent part, that

> At the direction of the arresting officer, the person first must be offered a breath test to determine the person's alcohol concentration. If the person is physically unable to provide an acceptable breath sample because he has an injured mouth, is unconscious or dead, or for any other reason considered acceptable by the licensed medical personnel, the arresting officer may request a blood sample to be taken.

The Plaintiff contends that Trooper Cannon should not have asked for consent to take the Plaintiff's blood sample person because no licensed medical personnel testified that the Plaintiff was physically unable to provide an acceptable breath sample.

There is significant distinction between police action which is unlawful because it violates the Constitutional and police action which merely fails to comply with a state statute or rule, or some other nonconstitutional mandate. In this § 1983 suit, the Plaintiff acknowledges that he consented to the blood test (Compl. at 5), and he has not alleged he was denied any federal constitutional protection regarding the taking of his blood sample. He merely alleges that Trooper Cannon failed to follow a state-mandated

12

procedure prior to seeking consent for taking a blood sample. (Pl's Mem. Opp. Summ. J. at 8-9.) Even if the court assumes this was true, the Plaintiff has not alleged a constitutional violation and thus he has failed to state a claim pursuant to §1983.

Based on the foregoing, it is recommended that the Defendant's Amended Motion for Summary Judgment (Dkt. # 43) be GRANTED.

IT IS SO RECOMMENDED.

                                          s/Bruce Howe Hendricks
                                          United States Magistrate Judge

September 2, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**